UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIAM YOUNG,

    Plaintiff,

vs.                                                                 Case No. 17-12279

SPEEDWAY, LLC,                                    HON. AVERN COHN

    Defendant.
_____/

**MEMORANDUM AND ORDER
DENYING DEFENDANT'S MOTION FOR RECONSIDERATION (Doc. 15)**

I.

This is a tort case. Plaintiff William Young (Young) is suing defendant Speedway, LLC (Speedway) seeking damages after a glass pot of coffee shattered causing hot coffee to spill on him. Young suffered burns to his ankles and feet. Speedway filed a motion for summary judgment. (Doc. 8). The Court denied the motion for the reasons stated on the record at a hearing on April 4, 2018. (Doc. 14).

Before the Court is Speedway's motion for reconsideration (Doc. 15) to which Young has responded (Doc. 17). For the reasons that follow, the motion is DENIED.

II.

In order to obtain reconsideration, Speedway must show a palpable defect by which the Court and the parties have been misled and that a different disposition of the case must result from a correction of the defect. See E.D. Mich. LR 7.1(h). A palpable defect is a defect that is obvious, clear, unmistakable, manifest, or plain. Witzke v.

Hiller, 972 F. Supp. 426, 427 (E.D. Mich. 1997).

III.

A.

Speedway says that the Court erred in applying the doctrine of res ipsa loquitor. In Jones v. Porretta, 428 Mich. 132 (1987), the Michigan Supreme Court held that the doctrine of res ipsa loquitur "entitles a plaintiff to a permissible inference of negligence from circumstantial evidence." Id. at 150. The court explained that "[t]he major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." Id. A plaintiff may rely on the res ipsa loquitur doctrine if: (1) the event was of a kind that "ordinarily does not occur in the absence of someone's negligence;" (2) it was "caused by an agency or instrumentality within the exclusive control of the defendant;" (3) it was not caused by "any voluntary action or contribution on the part of the plaintiff;" and (4) evidence of the true explanation of the event was "more readily accessible to the defendant than to the plaintiff." Id. at 150–151 (quotations and citations omitted). Essentially, a prima facie res ipsa loquitur case proceeds on a theory that, but for negligence, the claimed injury does not ordinarily occur. Id. at 157. See also Burns v. William Beaumont Hosp., 2017 WL 2200606, at *2 (Mich. Ct. App. May 18, 2017).

B.

Speedway says that res ipsa is inapplicable because the coffee pot was not in the "exclusive control" of Speedway at the time it shattered. In support, Speedway cites several cases, discussed below.

First, in Target v. Boyer, 2005 WL 602563 (Mich. Ct. App. Mar. 15, 2005), an

unpublished per curium opinion of the Michigan Court of Appeals, "the plaintiff reached up to a fireplace display at defendant's store to turn around a price tag hanging from the fireplace screen. The fireplace screen toppled toward her, bringing down a display of fireplace utensils." Id. at *1. The court of appeals found plaintiff could not establish that the display was defective and therefore rejected plaintiff's premises liability claim. The court of appeals also found that res ipsa did not apply because, "the equipment was not within defendant's exclusive control, but within the control of plaintiff and countless other shoppers." Id. at *2. Speedway says that like the fireplace display, the coffee pot was within Young's control and the control of other Speedway customers.

Speedway makes too much out of the court of appeals' statement. A fair read of the case shows the court of appeals was focused on the fact that nothing about the fireplace display was dangerous and there was nothing unusual about the display which could have caused it to fall. Here, the fact that the coffee pot shattered– something that would not normally occur or occur in the absence of some defect–distinguishes this case from Boyer.

Speedway also relies on Arsenault v. Designer Warehouse Center, Inc., 2014 WL 5464883 (Mich. Ct. App. Oct. 28, 2014), another unpublished opinion. In Arsenault, the plaintiff asked a salesperson for help getting some merchandise off of a high shelf. While the salesperson was getting the merchandise and plaintiff was not watching, a mannequin fell from above and struck plaintiff. The court of appeals noted that res ipsa applied because the mannequin was high on the wall and "beyond the reach of defendant's customers" and therefore "surely within the defendant's exclusive control." Id. at *3.

Speedway also cites the unpublished opinion of Rogoszewski v. State Lanes, Inc., 2006 WL 1185394 (Mich. Ct. App. May 4, 2006). In Rogoszewski, the plaintiff slipped and fell on the bowling lane approach at a bowling alley and broke his leg. Plaintiff contended that there must have been an oily substance on the lane which caused him to fall. In addition to rejecting plaintiff's negligence claim because plaintiff could not show that there was such a hazard, the court of appeals found res ipsa did not apply because he could not show that the bowling lane approach was in defendant's exclusive control because plaintiff and others had been using it for an hour before the fall. The court of appeals also found that plaintiff could not establish that the injury was one that does not happen in the absence of negligence because "people do slip and fall in the absence of negligence." Id. at *3.

Speedway says that reading Arsenault, Boyer, and Rogoszewski together, res ipsa does not apply where the instrumentality is accessible to others. This interpretation proves too much. The exclusive control requirement is not so narrow as to preclude application of res ispa where a plaintiff and others have contact with the instrumentality. Here, the coffee pot was in Speedway's exclusive control because– even though Young and others could use it–Speedway maintained the coffee pot within its store and it was placed there by Speedway for customers to use. Speedway cannot escape liability for the coffee pot by simply saying that the coffee pot was used by others. Moreover, the nature of the event - a coffee pot shattering upon lifting it up and pouring coffee - is not something that occurs in the absence of negligence.

Finally, Speedway cites Hasselbach v. TG Canton, Inc., 209 Mich. App. 475 (1994). In Hasselbach, plaintiff was helping her elderly husband into the shower. She

4

turned on the water. Her husband complained the water was too hot and he backed away, falling on plaintiff and breaking her leg. The plaintiff sued the landlord, the plumbing contractor, and manufactures of the water heater and thermostat, asserting liability on the grounds that there was a sudden surge of hot water. The court of appeals found that res ipsa did not apply because

> a possible explanation of the events leading up to this accident is that plaintiff, attempting to turn down the hot water, actually turned the hot water up. The fact that plaintiff denies having turned the hot water up does not change the fact that the instrumentality was not exclusively within defendants' control...

Id. at *480.

This case is not like Hasselbach. In Hasselbach, plaintiff was clearly in control of the water and could have, as the court of appeals pointed out, caused the incident by her actions. Here, there is no evidence that Young did anything to the coffee pot which would have caused it to shatter.

C.

It is also important to note that the only deposition testimony in the record as to what occurred is from Young.[1] The Court must view his testimony in a light most favorable to him.

In its summary judgment papers, Speedway said Young's deposition testimony conclusively shows the following facts:

14. No Speedway employee told Plaintiff the actual cause (as opposed to

---

[1] A DVD which apparently captured some of the incident was lodged with the Court. Unfortunately, the DVD contains still frames from several cameras located at the Speedway store. It is not viewer-friendly. The record also contains still photo shots from the video. Neither the DVD nor the photographs are particularly helpful in showing what occurred.

5

a possible cause) of the coffee pot breaking. Young dep. at p. 50.

15. No one at Speedway told Young that the coffee pot had not been rotated or that the coffee pot broke because it had not been rotated. Id. at 49-50.

16. No one at Speedway told Young that there was anything wrong with the coffee pot or that the coffee pot had not been maintained. Id. at 116.

17. Young admits that he has no evidence that anyone at Speedway caused the coffee pot to break. Id. at 71.

18. Young admits that he has no evidence that anyone at Speedway knew the coffee pot might break. Id. at 70-71.

19. Young does not know when Speedway acquired the coffee pot or when it went into service at Speedway. Id. at 54.

20. Young does not know how old the coffee pot was or what condition it was in when it arrived at Speedway. Id.

21. Young does not know who manufactured the coffee pot. Id.

22. Speedway employees watch for fatigued coffee pots, and it is standard practice to make sure the coffee pots are in good condition. Id. at 50, 76.

Speedway's factual assertions stretch the record. As to what the manager allegedly said to Young, Young testified at deposition as follows:

> A. It was just filled, you know, it's a standard height. It wasn't overfull. It wasn't near empty. It was a full coffee pot. And as I picked it up, it just popped. **And that was -- after it happened, the manager told me that they rotate those pots so things like that won't happen. And she stated that that pot must have needed to be rotated or didn't get rotated. She said they try to watch for that.**
>
> Q. Who told you that?
>
> A. **The manager. It was either the manager or the assistant manager. It was one of the ladies I dealt with. She stated that it seemed like she had possibly seen something similar before**.

6

Q. Did she tell you she had seen something similar before?

A. No, but just the way she explained it. **Like she said from putting the pots on and off. And she stated that we have to watch for when the pots get -- she didn't say weathered, but something like weathered. You know, like once they get used a bit, that they rotate them out.** That they use fresh pots. You never see a beat-up old pot. They always look good.
...

Q. So the pot looked fine to you?

A. Yes. **The manager mentioned she watched a video of me pick it up and said she could clearly see that I didn't hit anything that I merely picked it up and it just popped . That's why she was explaining to me how that could happen, I guess.**

**Q. What exactly did she say about how it could happen?**

**A. Just that they have to watch the pots and rotate them after usage.**

Q. Did she tell you that had not done that in this case?

A. No.

Q. So she never told you that this pot had not been rotated?

A. No.

Q. That's correct that she never told you that this pot hadn't been rotated?

A. **I believe she said it must have needed. I can't remember..I just remember conversation from her that things like that happen, which was a surprise to me.**

Q. So I guess I'm having trouble understanding about your conversation. So what do you mean things like that

7

happen?

**A. She said the pots wear out from just being constantly picked up and put down, you know. I guess the glass on the bottom would get thinner. And she said they have to watch for fatigued pots and throw them out, something to that effect.**

Q. And she told you that they do watch for fatigued pots, correct? Is that a yes?

A. It sounded like it was standard procedure, yes.

Q. **So did she tell you that they had not -- that that pot needed to be moved out and hadn't been?**

**A. Not in so many. words. No. She just said that it's possible for the pots to break like that.**

Q. **So all she said to you is this could be a cause, but she didn't know if that was the cause?**

**A. Yeah, you're right. She knew I didn't hit anything with it, though. She also told me. That was one of the first things she told me. Because it happened the second I picked it up. I didn't bump a pot next to I picked it up straight.**

Young dep. at pp. 48-50 (emphasis added).

D.

A proper read of Young's testimony is that the store manager told Young that coffee pots can break suddenly because they wear out and that Speedway employees try to prevent this from happening by rotating them or discarding them. While Speedway makes much of the fact that Young did not testify that the manager told him the "actual" cause of the break, a reasonable juror could conclude that the coffee pot was weak and needed to be replaced. Because the manager also testified as to an

8

awareness of this possibility, the fact that the coffee pot broke could lead to the conclusion that Speedway did not take adequate steps to prevent Young's injury. In other words, viewing Young's testimony in a light most favorable to him, a reasonable juror could conclude that Speedway was negligent regarding its care of the coffee pot based on a theory of res ipsa. As Henry David Thoreau said: "Some circumstantial evidence is very strong, as when you find a trout in the milk." So too when you have a coffee pot that unexpectedly shatters. Reconsideration is not warranted.

    SO ORDERED.

                                      <u>S/Avern Cohn</u>
                                      AVERN COHN
                                      UNITED STATES DISTRICT JUDGE

Dated: 6/19/2018
      Detroit, Michigan